(6 Misc. Rep. 27.)

## GROSS v. KELLARD.

(City Court of New York, General Term. November 27, 1893.)

1. NEGOTIABLE INSTRUMENTS—ACTION ON NOTE—DEFENSES—PAYMENT.

Where an association guarantied the note of defendant, induced its discount by a bank, took it up at maturity, and subsequently transferred it to plaintiff without consideration, defendant had the right, in an action on the note, to show a payment to the association on account of the note.

2. SAME—USURY.

Defendant, in such case, was entitled to show that the original transaction with the association for it to guaranty the note was tainted with usury, as plaintiff had no greater rights than the association, from which he obtained it, and which had received it after maturity and protest.

Appeal from trial term.

Action by Samuel Gross against May M. Kellard on a promissory note. From a judgment entered on a verdict directed for plaintiff, defendant appeals. Reversed.

Argued before VAN WYCK, NEWBURGER, and McCARTHY, JJ.

Gardner & Linehan, for appellant.

Jas. C. De La Mare, for respondent.

VAN WYCK, J. The plaintiff's proof shows that he is the holder of a $600 promissory note, dated November 18, 1892, payable four months after date, and made by May M. Kellard, the defendant, to her own order, indorsed by her and then by the American Guarantee Association, and by it returned to her, with the following letter, dated the same day:

"Mr. T. Robinson, Cashier, Mt. Morris Bank—Dear Sir: This will introduce Miss May M. Kellard, who wishes her note for $600, bearing our indorsement, which we guaranty, discounted. Kindly do so.

"Truly,                        American Guarantee Association."

That she immediately presented the note and this letter to the bank cashier, who discounted the note by paying her $587.80, and retaining $12.20, the legal rate for four month's discount. And that, after maturity and protest, said note was taken up by said American Guarantee Association, and the amount thereof paid to the bank; but no proof is made as to how or when the note passed from the association or to the plaintiff. However, the plaintiff proved ownership, by producing and marking the note in evidence, and the complaint alleges a payment on account of $150. The allegations of the answer were sufficient to permit of proof by the defendant—First, that she had paid $360, instead of $150, on account of the note; and, secondly, that the transactions between her and the American Guarantee Association as regards the making by her, and indorsement by it, of the note, was a mere device, contrived for the purpose of evading or concealing the appearance of a usurious loan made by it to her, when in truth it was such. The defendant, at trial, made the proper efforts to prove the circumstances under which the note was transferred to plaintiff; that plaintiff had paid no consideration for the same; that she (defendant) had paid to the American Guarantee Association $360 on account of the note; that the $587.80 handed to her by the bank were not taken from its funds, but directly from the funds of the American Guarantee Association, then on deposit with the bank; that this Association, at the time the note was made by her and indorsed by it, received from her other considerations than the note, and the $12.20 discount; and that the note was so given and indorsed as part and parcel of a transaction by which the American Guarantee Association was to obtain more than the legal rate of interest on the $600 loan. These efforts of defendant to make such proof were rendered ineffectual

by reason of several erroneous rulings which seem to have been induced by the misleading statements of plaintiff's counsel at folio 38, as follows:

"Defendant's Attorney: It is not denied by the plaintiff that the note, after maturity, came back into the hands of the association, and was by them transferred. The Court: Is that so, Mr. De La Mare? Plaintiff's Attorney: No, sir."

At any rate, the association having taken up the note after maturity, and paid the bank the amount of same, it follows that if plaintiff afterwards obtained the note from the association, paying nothing therefor, then that defendant had the right to show the payment of $360 on account, as alleged in the answer, and the refusal of this right, would alone force a reversal of the judgment. However, as the case must go back for a new trial, it would seem proper to suggest, regarding the usurious aspect of the transaction, that the facts alleged in the answer and shown on record, if proven on the new trial, would tend to indicate that Miss Kellard, the defendant, had applied to the American Guarantee Association for a loan of $600 for four months, and had been informed by its agent negotiating the transaction that if she would make her two promissory notes, at four months, to her own order, for $600 and $210, respectively, and indorse the same, they would indorse the $600 note, and secure its discount for her by the Mt. Morris Bank, provided that she would, in consideration thereof, promise to pay them $210, as evidenced by the other note, and to secure both notes by a chattel mortgage for $810 on her personal property, and to all of which she and they agreed; and that she delivered to the association the chattel mortgage for $810, and also the $210 note which she had not since seen, and which, it would seem, the association claims was paid, for the complaint admits a payment of $150, while she claims payment of $360 on account of the $600 note, thus inducing the inference that the association had applied $210 of the $360 in payment of the $210 note, and $150, the balance, on account of the $600 note; and that the association had indorsed the $600 note, and secured its discount for her by the bank, as per the letter to the cashier.   If it should be proven that the $587.-80 handed to her by the bank in discounting the $600 note were taken, not from the bank's funds, but directly from the association's fund, then on deposit with the bank, why, of course, the transaction would be usurious, and the note invalid, in whosesoever's hands it might come, either before or after maturity.   But, assuming that they were taken from the bank's own funds,—in other words, that it was a regular discounting by the bank for the defendant, without any notice to the bank of the previous arrangements between the defendant and this indorsing association,—still these previous arrangements would render the transaction usurious, and defeat an action on the note against the defendant by such association, because it was the original party to these arrangements; and, moreover, it had regained possession of the note after maturity and protest.   Has this plaintiff greater rights than the

association, through whom his title to this dishonored note must have come? Does not a protested note wear the badge of its dishonor, and is it not in itself sufficient notice to all intending purchasers to put them upon inquiry of the maker as to its validity or his defenses? Judgment reversed, and new trial granted, with costs to appellant to abide the event. All concur.